# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRUCTUOUSO ZAVALA-ALVAREZ, | ) | |
| | ) | Case No. 19 C 4041 |
| Plaintiff, | ) | |
| | ) | District Judge Steven Seeger |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| DARBAR MANAGEMENT, INC., IRFAN | ) | |
| MOTEN, M. SALIM MOTEN, IMRAN | ) | |
| MOTEN, SKAANZ ENTERPRISE, INC., and | ) | |
| ASIF RANGOONWALA, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the magistrate judge on referral for discovery supervision (D.E. 14).

Plaintiff brought this collective action complaint under the Fair Labor Standards Act, the Illinois

Minimum Wage Law, and the City of Chicago Minimum Wage Ordinance for alleged unpaid

overtime compensation and failure to pay minimum wages. Plaintiff alleges that defendants –

Darbar Management, Inc. ("Darbar Management" or "Darbar"), Irfan Moten, M. Salim Moten,

Imran Moten, Skaanz Enterprise, Inc. and Asif Rangoonwala – failed to pay him overtime and

minimum wages during his employment at defendants' restaurant, Delhi Darbar Kabab House

("the restaurant") on Devon Avenue in Chicago. Plaintiff alleges that he worked at the restaurant

as a dishwasher, cook, and cleaner for 20 years until May 24, 2019.

Now before the Court is plaintiff's motion for discovery sanctions against defendants

Darbar Management and Irfan Moten (D.E. 70). In the motion, plaintiff seeks a default judgment

against those defendants, or alternatively, an order barring defendants from introducing evidence

in opposition to plaintiff's wage-and-hour claims, including evidence challenging plaintiff's

assertions about his term of employment, his work schedule and hours of work performed, and

evidence in support of any claim that plaintiff is not covered by the FLSA because Darbar

Management was not an "enterprise" under the statute and had annual sales volumes of less than

$500,000. Plaintiff further seeks attorney's fees and costs incurred in filing the discovery motion

that led to the Court's order underlying the instant motion for sanctions. The magistrate judge held

evidentiary hearings on the sanctions motion on July 28 and August 14, 2020. Because plaintiff

seeks sanctions up to and including entry of a default judgment, the magistrate judge approaches

its duty on the sanctions motion as calling for a report and recommendation to the district court.[1]

## I.     Background

### A.     Plaintiff's January 2020 Motion to Compel

As discovery in this FLSA wage-and-hour case began, the district court ordered that fact

discovery close on January 21, 2020. (D.E. 13.) On referral, the magistrate judge extended the

fact cutoff to March 23, 2020, at plaintiff's request. (D.E. 28.) On January 10, 2020, plaintiff filed

the motion to compel that marked the first in the chain of events leading to the sanctions motion.

In plaintiff's motion to compel (D.E. 32), plaintiff asserted that Darbar Management and

Irfan Moten had failed to provide "garden-variety" FLSA discovery such as plaintiff's weekly

work schedules, rates of pay, total wages paid per pay period, and the amount of overtime

premiums paid, as well as basic contact and employment information for co-worker witnesses.

Plaintiff asserted that he needed this information to prove, among other things, his claims that he

unlawfully was paid a flat weekly wage for work weeks in which he worked as many as 68 hours,

and that the restaurant generated more than $500,000 in revenue from 2016 through 2019,

---

[1] At least the fee-shifting portion of the relief sought in the sanctions motion has been held to be non-dispositive and thus within the magistrate judge's authority to decide under a discovery referral, although the district court judge retains the ability to disagree with that conclusion. *Hangzhou Aoshuang E-Commerce Co., Ltd. v. 008Fashion*, No. 19 C 4565, 2020 WL 4249081, at *3, 8 (N.D. Ill. July 24, 2020). In any event, with the magistrate judge weighing in on the dispositive aspects of the motion, this Report and Recommendation leaves the entire motion in the district court's hands.

rendering it an "enterprise" for purposes of FLSA coverage.  Importantly, Darbar Management and Irfan Moten denied that allegation in their answer (Answer (D.E. 30) ⁋ 8) and filed a motion for summary judgment in December 2019 on the issue of enterprise liability under the FLSA, asserting that initial discovery in the case established a lack of a triable issue on whether defendants earned $500,000 or more in revenue from 2016 through 2018.  (D.E. 35.)  Plaintiff asserted in the motion to compel that defendants had produced a series of hand-written time-cards for only about a third of the relevant period, along with select state tax documents, but that as a whole, the production lacked corporate records, comprehensive time records, or other records of what the business actually paid its workers. Plaintiff's motion also blasted defendants' interrogatory responses as inadequate, complaining that rather than providing information about the kitchen staff and its work hours and wages, defendants referred to the incomplete set of time cards, which purported to reflect only 54 of the 155 weekly pay periods at issue in the lawsuit.

## B.    The Court's January 2020 Ruling on the Motion To Compel

The magistrate judge comprehensively granted the motion to compel, ordering on January 16, 2020 (D.E. 40) that Darbar Management and Irfan Moten produce time cards, time sheets, and all records of cash wages paid for the full extent of the relevant period. As to the issue of FLSA "enterprise" status, the magistrate judge labeled that issue as "critical to the case" in view of defendants' summary judgment motion, stating:  "The district court hardly can be in a position to decide such a summary judgment motion if more discovery – as specifically requested by the Plaintiff – is still outstanding." (*Id.*)

Specifically, the magistrate judge ordered that defendants produce the underlying, "primary source" documentation of their revenue stream during the relevant period, which included credit-card or point-of-service receipt records. (*Id.*) To the extent defendants did not

3

possess "primary source" documentation or wage and hour records, the Court ordered defendants to produce a statement that they were not withholding any documents responsive on those issues. (*Id.*)  The Court also ordered defendants to respond to interrogatories or supplement their interrogatory responses to provide the requested contact information of the kitchen staff members, and the Court determined that defendants would not be permitted to answer interrogatories by relying on Rule 33(d) to refer to an incomplete set of time cards. (*Id.*)

### C.    Defendants' Response to the Court's January 2020 Discovery Order

Darbar Management and Irfan Moten served supplemental responses to plaintiff's document requests and interrogatories on January 31, 2020.  (Motion, Ex. A (D.E. 70-1).)  In their supplemental responses to document requests, Darbar Management and Irfan Moten stated that their only records of plaintiff's work hours and wages consisted of the time cards they already had produced (Hearing Exh. 8 (D.E. 96-8), hereinafter "the Time Cards"), that they had no cash ledgers or receipts because most of their business was done by credit card transactions, and that they had no corporate record books.  (*Id.*)  Further, they identified only three restaurant cooks, dishwashers or cleaners in their employ:  a person now residing in Pakistan, a person only identified as "Rihilio," and defendant M. Salim Moten, Irfan Moten's brother.  (*Id.*)

The supplemental interrogatory answers stated that plaintiff never worked more than 40 hours a week and that "the *exact* dates and times of Plaintiff's employment are contained in the production requests herein D000001-D000021" (the Time Cards).  (*Id.* (emphasis added).)  This latter representation would become one of the central issues in the sanctions litigation, because it stated unequivocally that the answer to one of the most important questions in the case – the hours worked by plaintiff – could be found in the specifically identified records. Darbar Management and Irfan Moten repeatedly stated in the written discovery responses that the Time Cards were the

only employment records they possessed, and thus the only records they had concerning plaintiff's dates of employment, his total number of hours worked, and his gross wages. (*Id.*) Nowhere in the January 31, 2020 supplemental discovery responses did Darbar Management and Irfan Moten give any indication that the Time Cards were not contemporaneously generated or anything other than records they had maintained in the ordinary course of their business. Per Rule 33, Darbar Management and Irfan Moten attached to their January 31, 2020 supplemental responses a notarized affidavit from Irfan Moten, stating that the responses were based on his personal knowledge and were "true and correct based on information within the possession and control of the defendants." (*Id.*)

Darbar Management and Irfan Moten reiterated the same answers in a second set of responses to supplemental document requests and interrogatories dated February 13, 2020, also accompanied by a verification affidavit from Irfan Moten. (Motion, Ex. B (D.E. 70-2).) In those responses, Darbar Management and Irfan Moten stated that they have not owned the restaurant since July 2019. (*Id.*) The Irfan Moten verification affidavit also stated that Darbar Management and Irfan Moten did not possess any additional "responsive" documents beyond the Bates range describing what they had produced already, which included the Time Cards. (*Id.*) In other words, the affidavit referred, under oath, to the Time Cards as "responsive documents," and neither the affidavit nor the discovery response it verified indicated that the Time Cards were anything but employment records produced from the files of the business.

Defendants' response to the Court's discovery order also included its supplemental production of a few documents: (1) a set of Darbar Management's redacted, partial PNC Bank statements for part of 2016 through 2018, and (2) a set of documents which appear to be summaries

(and not primary source sales documents) of monthly restaurant sales revenue through July 2019. (*See* Motion at 4 & Exs. C, D (D.E. 70-3, 70-4).)

> **D.**     **Irfan Moten's Discovery Deposition, His Admissions on Document Destruction, and Withdrawal of Defendants' Summary Judgment Motion**

On March 4, 2020, Irfan Moten testified at his discovery deposition that he "had" his brother, defendant Imran Moten, search for documents responsive to plaintiff's discovery requests, and that Imran and M. Salim Moten conducted the search. (Motion, Ex. E (D.E. 70-5) ("Irfan Moten 3/4/20 Dep. Tr.") at 22). Irfan Moten testified that he asked them to search for documents in a box in a "little soda room" at the business, where "all the paper goes," including time cards. (*Id.* at 23.) Importantly for purposes of the instant sanctions motion, Irfan Moten testified, under oath, that Imran Moten located the Time Cards during a search for the restaurant's employment records and turned them over to Irfan, and they were then produced in discovery. (*Id.* at 25.) Irfan Moten testified that employees used time cards to log their time, and Imran and Salim Moten filled them out.  (*Id.* at 59-60.)

In addition, Irfan Moten testified that he only produced the Time Cards (the documents labeled D1-D21) because Imran Moten threw out the other employee time records, including other time cards, "when we cleaned the place" in late 2019. (*Id.* at 61.) Irfan Moten testified as follows:

> Q:     Can you name one person who used a timecard other than the plaintiff?
>
> A:     No.  I asked my brother for these timecards and that's what he produced.
>
> Q:     And he threw out the others, right?
>
> A:     Correct.

(*Id.* at 76.) Irfan Moten testified that he had no recollection as to the accuracy of the Time Cards, and that they were not date-stamped but "written in." (*Id.* at 93.) Irfan Moten said nothing about

6

whether the Time Cards were "written in" much later, to create documents that would be produced in the litigation.

Furthermore, Irfan Moten testified that Imran and Salim Moten did not have the names of other kitchen staff members whom plaintiff was seeking to identify as a way of discovering or corroborating information about plaintiff's hours. (*Id.* at 53-54.) Irfan Moten also could not identify, other than his uncle, any additional Darbar Management employees beyond those identified in the written discovery responses. (*Id.* at 56.)

Irfan Moten also testified about tax returns and state quarterly wage reports that he and Darbar Management purportedly filed with state and federal authorities, which evidence was important to their defense that Darbar Management had no "enterprise" liability under the FLSA because it had annual revenues of less than $500,000. Irfan Moten and Darbar Management produced a 2018 federal tax return, for example, showing annual revenue of about $493,000, but also showing wage payments of less than $16,000, an amount that the restaurant's quarterly Illinois wage reports indicated was paid to only two people that year: Mohammed Motem and Anjum Shekh. (Motion, Exhs. F, G (D.E. 70-6, 70-7).) Neither plaintiff nor any other kitchen staff employee whose name arose in discovery was among the recipients of those wages. Through a lengthy and appropriately persistent examination, Plaintiff's counsel obtained Irfan Moten's admission that despite his earlier testimony that the returns were accurate, the wage numbers in federal tax returns from 2018 and 2016 did not account for payments made to plaintiff and at least one other kitchen staff employee (Rogelio) in cash or from other sources, so that the tax returns contained false statements. (Irfan Moten 3/4/20 Dep. Tr. at 104-15.) Further, Irfan Moten admitted that the restaurant did not maintain any records of its cash receipts, and Irfan Moten had no

7

knowledge of any records concerning revenues generated by the restaurant's sales through Uber Eats, a delivery service the restaurant began to use in 2017 or 2018.  (*Id.* at 99, 100-01.)

In other words, the tax returns were false as to at least two important propositions:  First, the wages paid to the restaurant's employees, and second, the assertions as to total annual revenues being less than $500,000, as the returns did not account for additional cash revenues used to pay wages.  At the end of the deposition's discussion of the tax returns, defense counsel agreed on the record to withdraw the then-pending Darbar Management and Irfan Moten summary judgment motion contending that discovery established there was no triable issue as to whether revenues were less than $500,000 for purposes of FLSA enterprise liability.  (*Id.* at 118-20.)   Darbar Management and Irfan Moten promptly moved to withdraw the summary judgment motion, which was then denied as moot.  (D.E. 50, 52.)

### E.    Plaintiff's Sanctions Motion

On June 10, 2020, plaintiff filed his motion for sanctions (D.E. 70) based on what he asserted was a failure by Darbar Management and Irfan Moten to comply with the magistrate judge's discovery order of January 16, 2020.  First, Plaintiff complained that because the federal tax returns produced by Irfan Moten and Darbar Management failed to report as income the cash generated to fund the cash wages paid to plaintiff and other kitchen staff, defendants did not produce sufficient information for plaintiff to determine the wages paid to him and the kitchen staff or defendants' revenues.  (Motion at 5-7.)[2]  Second, as to the identification of kitchen staff, plaintiff claimed that defendants produced information only as to one staff member who had relocated to Mexico and failed to respond properly to related interrogatories by referring plaintiff

---

[2] For example, as explained above, Darbar Management's 2018 federal return showed annual gross revenue of $493,514, but only $15,698 in salaries and wages paid to only two persons and not including any kitchen staff.  (*Id.* at 6 & Exh. F (D.E. 70-6).)

8

to the Time Cards, thus preventing plaintiff from "exploring fact witnesses who possess critical evidence about Defendants' wage payment and compensation practices, work schedules, and the hours of work performed by the Plaintiff." (*Id.* at 8-9.) Third, the sanctions motion asserted that Darbar Management and Irfan Moten destroyed responsive and material discovery documents after being served with plaintiff's document requests in the lawsuit. (Motion at 9-11.) Plaintiff served his document requests on Irfan Moten and Darbar Management on September 5, 2019 (*Id.* at 1), and Irfan Moten testified at his deposition that the Time Cards were discarded from the box in the soda room in late 2019 or "probably third quarter, fourth quarter" (Irfan Moten 3/4/20 Dep. Tr. at 61), indicating that the document destruction occurred after he and Darbar Management had been served with the document requests.

### F.    Irfan Moten and Darbar Management's Response to the Sanctions Motion

In their response to the sanctions motion, Irfan Moten and Darbar Management stated that "[t]he simple response is that there are no records." (Defendant's Response to Motion for Sanctions (D.E. 78, "Resp.") at 2.) They attached a notarized affidavit by Imran Moten flatly contradicting Irfan Moten's deposition testimony on document destruction: "I did not destroy any business records relating to Darbar Management, Inc. last summer of 2019 or any other time." (*Id.*, Exh. C (D.E. 78-3).) Further, defendants Irfan Moten and Darbar Management argued that no sanctions were necessary because under the FLSA, their lack of business records about plaintiff's wages and hours would shift the burden to defendants, and they planned to "produce their own witnesses who will try to negate plaintiff's testimony as to his overtime claims." (Resp. at 4.) The trial in this matter, then, would amount to a swearing contest between such defense witnesses and "the plaintiff's own self-serving testimony that he for years worked 6 days a week," Irfan Moten and Darbar Management maintained. (*Id.*)

Defendants Irfan Moten and Darbar Management also produced more documents as attachments to their sanctions motion response.  These documents consisted of:  (1) a set of Illinois monthly sales tax returns for the first nine months of 2019, not produced earlier; and (2) a "[l]ist of known Employees of Delhi Darbar Restaurant," including Salim Moten, an individual named Anjun Shaikh, and five possible kitchen workers, only one of whom was identified by full name and last known address. (Resp., Exhs. A, B (D.E. 78-2, 78-3.) Two were identified by first and last name only, and the other two were identified only by their first name. (Resp., Exh. B.)  Then, five days before the July 28, 2020 evidentiary hearing on the sanctions motion, counsel for Irfan Moten and Darbar Management notified plaintiff's counsel by email that the Time Cards were not contemporaneously prepared, but instead were prepared after service of the document requests in this matter.  (8/14/20 Hearing Tr. at 142-43; Plaintiff's Response to Motion for Clarification, Ex. A (D.E. 89-1).)   In that email, counsel for Irfan Moten and Darbar Management stated the following in relevant part:

> Previously before i (sic) was retained the defendants turned over copies of time sheets relating to your client.  After further discussions with Darbar it turns out that the time sheets were not prepared contemporaneously, but were made up from memory at a later date.  I was also assured by my clients that their previous attorney … was unaware of this when the time sheets were produced.

(D.E. 89-1.)

### G.    The Evidence at Hearing

The testimony at the two-day evidentiary hearing on plaintiff's sanctions motion only deepened the mystery about plaintiff's wages and hours and the restaurant's annual revenues, because the testimony revealed a pattern of obfuscation, obstruction, and outright lies that made it virtually impossible for plaintiff to use the restaurant's records to prove his case.

First, and perhaps most significantly, Irfan Moten's hearing testimony confirmed that he knew the Time Cards had been created long after the fact for litigation purposes. He testified that in October or November 2019, when he and Darbar Management were preparing to respond to plaintiff's discovery requests, Irfan, Imran, and Salim Moten created the Time Cards themselves based on the memory of Salim Moten. (7/28/20 Hearing Tr. (D.E. 94) at 51.) Irfan Moten testified that he, Imran, and Salim sat together around a table at the restaurant and filled the Time Cards out at the same time, and he identified several of the Time Cards as having his, Imran's or Salim's handwriting on them. (*Id.* at 52-59.) Irfan Moten had no personal knowledge of the hours plaintiff worked. (*Id.* at 51-59, 65.)[3] His hearing testimony contradicted the following written discovery responses served by him and Darbar Management and verified under oath by Irfan Moten:

- the November 4, 2019 response that plaintiff "worked from 8:00 p.m. until 3:00 a.m. Wednesday through Sunday on a weekly basis" and referring to the Time Cards as record evidence of the hours plaintiff had worked (Hearing Exh. 5 (D.E. 96-5) at 3);

- the supplemental answer to Interrogatory No. 2, served on January 31, 2020 after the Court's January 16 discovery order, stating that plaintiff "either worked 8:00 p.m. until 3:00 a.m. or 5:00 p.m. until 3:00 a.m. Wednesday through Saturday on a weekly basis," that plaintiff "*never worked more than 40 hours on a weekly basis Wednesday through Sunday regardless of the shift worked*," and that "*the exact dates and times of Plaintiff's employment are contained in the production requests herein D000001-D000021*" (Hearing Exh. 9 at 10 (D.E. 96-9) (emphasis added));

- the document request responses served on January 31, 2020, which continued to identify the Time Cards as those defendants' sole records of plaintiff's wages and hours (*Id*. at 4-5, 13);

- the verified second supplemental set of interrogatory responses dated February 13, 2020, which continued to refer to the Time Cards in response to the interrogatory

---

[3] Salim Moten confirmed that the dates and times shown in the Time Cards were mere estimates drawn from his memory rather than "exact" dates and times, and based on his belief that plaintiff worked "up to 40 hours a week." (7/28/20 Hearing Tr. at 51-59, 65, 107-09.) And Imran Moten remembered sitting at a restaurant table with Irfan and Salim as the three "did go through the timing together ourselves" with the Time Cards in front of them. (8/14/20 Hearing Tr. (D.E. 97) at 137.) Imran said he did not remember who filled them in but noted "it was [Salim's] job." (*Id*. at 137-38.) The Time Cards reflected plaintiff working weeks of 40 hours or less, as shown in a spreadsheet prepared based on the Time Cards. (*Id*. at 42-43.)

11

asking for the plaintiff's hours worked, without disclosing the true nature of the Time Cards and Irfan Moten's and Darbar Management's lack of personal knowledge as to this issue.  (Motion at 11 & Exh. B); and

- the second supplemental document responses, containing the same misstatement or half-truth that the Time Cards were the only documentary evidence in support of defendants' denial of plaintiff's assertion that he regularly worked 68-hour weeks.  (*Id.* at 7.)

Second, Irfan Moten testified at the hearing that Imran or Salim had given him more names of kitchen staff, and he knew by at least November 2019 about Nicholas Garcia, Lazaro Morales, a woman named "Alecia," and a man named "Uno", but that he did not include them in discovery responses "because of their immigration status …."  (7/28/20 Hearing Tr. at 77, 83-85.) This contradicted the following written discovery responses served by him and Darbar Management and verified under oath by Irfan Moten:

- the November 4, 2019 response identifying only plaintiff when asked for the names of the kitchen staff members. (Hearing Exh. 5 at 3);

- the January 31, 2020 interrogatory responses identifying only one person said to be living in Pakistan, Salim Moten, and a person identified as "Rihilio," with a phone number (Hearing Exh. 9 at 10); and

- the second supplemental set of interrogatory responses dated February 13, 2020, identifying only the same three kitchen staff members they had mentioned in their January 31, 2020 supplemental responses. (Motion at 11 & Exh. B.)

Third, Irfan Moten's testimony at the sanctions hearing also established that at least the following under-oath statements or omissions in his March 4 deposition were false:

- that Imran and Salim Moten did not know or provide him with the names of other kitchen staff in November 2019 (Irfan Moten 3/4/20 Dep. Tr. at 53-54);

- that besides his uncle and the man now in Pakistan, he could not name any other kitchen staff members other than the "Rogelio" (earlier misspelled as "Rihilio") person he first identified on January 31, 2020 (*id.* at 55-57);

- that kitchen staff members including plaintiff used time cards filled out by Imran and Salim Moten, but that Irfan Moten and Darbar had produced the Time Cards

12

without disclosing that they created the Time Cards for purposes of the litigation (*id.* at 59-60, 93-95);

- that he did not know when the Time Cards were filled out, that he could not identify the handwriting on the Time Cards, and that the handwriting was not his but "could be" Imran's or Salim's handwriting; [4]

- that he had never heard of Lazaro Morales and was not aware Morales was a cook at the restaurant (Irfan Moten 3/4/20 Dep. Tr. at 73-74);

- that he had never seen a Latino or Hispanic person working in the restaurant's kitchen (*id.*);

- that he had never heard of a woman named Alicia and could not recall any female other than his wife working at the restaurant (*id.* at 74);

- that he had never heard of a cook there named Nicholas (*id.* at 77);

- that only his family did the cooking, with kitchen staff only rewarming the food and not there for the entire day (*id.* at 78); and

- that the November 4, 2019 written discovery responses by him and Darbar Management were truthful, complete and accurate. (*Id.* at 26).[5]

The foregoing list of false statements under oath by Irfan Moten, on his own behalf or on behalf of himself and Darbar Management, are all material to issues in the case, including plaintiff's hours worked, the restaurant's records of those hours, the nature of the records defendants produced, and the evidence that might be available for plaintiff to corroborate his allegations about those hours.

Fourth, the hearing testimony showed that, for purposes of the sanctions motion, any destruction of employee records in the soda room box occurred some two months after the plaintiff's requests for those documents. Irfan Moten testified that Imran told him he threw away

---

[4] Plaintiff represented at the sanctions hearing that Irfan Moten gave the March 4 testimony recited in this subparagraph, and although the record does not include the precise deposition transcript pages, plaintiff's counsel's examination cited to page 90 of the deposition transcript and drew no objections. Accordingly, the Court accepts plaintiff's counsel's representations as to Mr. Moten's deposition testimony in this regard.
[5] The foregoing false statements under oath are separate and aside from the falsity of tax return documents that Irfan Moten said were federally filed and then produced in support of his and Darbar Management's defenses to FLSA enterprise liability.

the box. (7/28/20 Hearing Tr. at 46-47.)[6]  Imran Moten testified that Irfan asked him to search for documents in connection with the lawsuit about two or three months after it was filed, and probably a short time before the September 5 service of the discovery requests. (8/14/20 Hearing Tr. at 127.) Imran did not remember giving Irfan any documents from the box or throwing it or any other business records away, and he stood by the veracity of the affidavit attached to the sanctions response stating that he had not destroyed any of the restaurant's business records.  (*Id.* at 129, 132, 152-54, 166.)

Fifth, the hearing record left little question that Irfan, Imran, and Salim Moten were deeply involved in responding to the discovery requests, at a time when they had significant management authority over the restaurant. Although Irfan Moten testified that defendant Asif Rangoonwala was "running the place" by May or June 2019 and is now the current owner, in June 2019, when the lawsuit was filed, Salim Moten was the manager of the restaurant and remained so through September 2019, after plaintiff's document requests were served. (*Id.* at 22-23.)  Also, before Rangoonwala began to "take over," Irfan Moten testified that the persons in charge of setting employee work schedules at the restaurant were Imran and Salim Moten.  (*Id.* at 29.)  In any event, Irfan Moten and Darbar Management produced PNC bank account records for Darbar Management showing account activity through October 2019, which was a time when Irfan, Imran, and Salim had check-signing authority.  (*Id.* at 179.)  And, despite hearing testimony about a purported sale of the restaurant in 2019 to Rangoonwala, according to Irfan Moten the sale of the

---

[6] Irfan Moten's attempt to change his story under questioning by the Court at the end of the hearing contradicted his deposition testimony and Imran Moten's hearing testimony. Irfan said he thought the materials in the soda room were thrown away in May 2019 and contained mostly "sentimental stuff" including pictures of his father and receipts that Imran placed there (*id*. at 88-89), despite testifying at his deposition that he asked Imran to search for documents in the soda room box, where "all the paper goes," including time cards.  (Irfan Moten 3/4/20 Dep. Tr. at 23.)

14

business never actually occurred, and no business sale document exists to prove that it occurred. (*Id*. at 20.)

In sum, the foregoing events show that defendant offered two different sets of facts in discovery in this matter: one before plaintiff's sanctions motion and one after it.  Before the sanctions motion, an "alternative" set of facts existed.[7]  Irfan Moten and Darbar Management had only the Time Cards as employment records for plaintiff, and virtually no other information about when the plaintiff worked or who else worked in the kitchen.  And, for the time frames covered by the Time Cards, the Time Cards "exact[ly]" reflected plaintiff's work weeks, with no hint from defendants Irfan Moten and Darbar Management that Irfan, Imran, or Salim prepared the Time Cards months after plaintiff stopped working and sued the restaurant.  Irfan Moten and Darbar Management made or persisted in all of these misrepresentations *after* the Court's discovery order dated January 16, 2020. It took a sanctions motion by plaintiff, and an on-the-record court hearing with three live witnesses in July and August 2020, to reveal that no contemporaneous records exist at all, that the records plaintiff was led to believe were contemporaneous records in fact were fabricated long after the events in question, that Irfan Moten and Darbar Management knew as early as November 2019 that at least some documents were destroyed after service of the discovery requests to which they were likely responsive, and that virtually everything plaintiff had been told in written and oral discovery about the nature and quality of defendants' proof of his work hours and of the restaurant's revenue stream was false or wholly unreliable.

---

[7] *See Old White Charities, Inc. v. Bankers Ins. LLC*, No. 5:17-cv-01375, 2018 WL 8622359, at \*6 n.10 (S.D. W. Va. Aug. 18, 2018) ("While much as been said and written about 'alternative facts' and that 'truth is not really truth', a court must insist that when counsel make representations of fact to a court, that the fact so represented is in fact factual. When counsel asserts that something is true, a court must hold counsel to the truth so represented.")  So it is with facts that a party represents in discovery under oath in a verification affidavit or at a discovery deposition.

15

## II.    Discussion

### A.    The Court's Authority to Impose Sanctions

Rule 37 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions for a litigant's failure to comply with discovery and obey discovery orders. Fed. Civ. P. 37(b)(2)(A); *see also United States v. Z Inv. Props., LLC*, 921 F.3d 696, 698 (7th Cir. 2019). In addition, courts have "inherent authority" to regulate the conduct of those appearing before it, "and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "The exercise of either power requires the court to find that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Id*. "In civil cases, the facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence." *Id*. at 781.

### B.    Fabrication of Evidence, Destruction of Evidence, and Perjury

As explained above, the conduct for which plaintiff seeks sanctions includes: destruction of relevant and likely highly material evidence, some of which was destroyed after defendants received plaintiff's discovery requests (any contemporaneous evidence of hours that plaintiff or other kitchen staff worked and the cash wages they received); fabrication of evidence (Irfan, Imran, and Salim Moten filled out the Time Cards months after plaintiff stopped working at the restaurant and sued the restaurant); repeated false statements under oath by Irfan Moten and Darbar Management that the Time Cards were the only employment records for plaintiff and falsely implying that they were contemporaneous employment records; repeated false statements under oath by Irfan Moten and Darbar Management that the Time Cards, for the time periods they

16

covered, showed the exact hours plaintiff worked and wages he received; repeated false statements under oath by Irfan Moten and Darbar Management that defendants did not know the names of other kitchen staff members whom plaintiff was seeking to identify (despite knowing about at least four others); and repeated false statements under oath by Irfan Moten and Darbar Management that the restaurant had annual revenues of less than $500,000 (based on false tax returns).

This discovery misconduct was egregious and unquestionably was done willfully and in bad faith by Irfan Moten and Darbar Management. Irfan Moten testified on the witness stand that he was present during the fabrication of the Time Cards, and that his handwriting appeared on some of them. This was an admission that Irfan Moten's own sworn verifications were false, that from the first set of discovery responses on November 4, 2019, through the supplemental responses on January 31 and February 13, 2020, and at least through his March 4, 2020 deposition testimony, he fully knew that no authentic time cards existed, and that the ones he and Darbar Management had produced were fabricated by him, Imran Moten, and Salim Moten in an effort to create a favorable record for purposes of the litigation. This was nothing short of perjury, designed to hide the fact that the Time Cards were fabricated and to foist those Time Cards upon plaintiff and the Court as genuine, credible evidence that plaintiff's work hours did not rise to a volume that would trigger the defendants' liability under the FLSA.

Darbar Management is also responsible for this misconduct because Irfan Moten was a central figure controlling Darbar Management as its president during the relevant period. (Irfan Moten 3/4/20 Dep. Tr. at 103.) Furthermore, Darbar Management had an independent duty to produce documents under Rule 34 and respond to interrogatories under Rule 33, which it did by jointly answering plaintiff's Rule 33 and Rule 34 discovery requests with Irfan Moten, and thus

17

participating in Irfan Moten's perjurious verification of the false responses to those discovery requests.

In addition, the misconduct of Irfan Moten and Darbar Management unquestionably prejudiced plaintiff and obstructed discovery on central issues in this case.  Plaintiff in this FLSA action must establish his work hours and wages, and the false discovery responses and false deposition testimony by Irfan Moten about the nature and quality of his and Darbar Management's evidence bear directly on plaintiff's ability to prove the essential element of his claim.  The assertions in the written discovery, via the Time Cards, amounted to a contention that plaintiff worked no more than 30 to 40 hours a week (and thus no overtime). Plaintiff also must establish the restaurant had at least $500,000 in annual revenue for Darbar Management to be liable as an enterprise under the FLSA, and the sanctions motion established that the records Darbar Management produced as to its revenues included false tax returns that understated the restaurant's revenues because they excluded cash revenue for which Darbar Management maintained no records at all.

Furthermore, the proceedings and the prosecution of plaintiff's claims were delayed substantially, from mid-fall of 2019 – when his proper discovery requests should have been answered truthfully – to more than a year later. During that time, plaintiff was put to a motion to compel and then a sanctions motion -- including an evidentiary hearing -- before he found out the extent of the discovery misconduct. Plaintiff was not told, and he did not learn until after filing the sanctions motion, that Irfan Moten and Darbar Management had falsified the little evidence they had produced and concealed the destruction of an unknown set of documents that may or may not have contained highly material evidence -- which they destroyed *after* they had received discovery

requests calling for such evidence and after Irfan Moten admittedly instructed Imran and Salim Moten to search for documents.[8]

### C.    Choice of Sanctions

"District courts have broad discretion in fashioning sanctions against litigants." *Greyer v. Illinois Dep't of Corr.*, 933 F.3d 871, 877 (7th Cir. 2019). Rule 37(b)(2)(a) sets forth the following as "include[d]" among the options for an appropriate sanction:

> (i)    directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii)    striking pleadings in whole or in part;

> (iv)    staying further proceedings until the order is obeyed;

> (v)    dismissing the action or proceeding in whole or in part;

> (vi)    rendering a default judgment against the disobedient party; or

> (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i-vii). Considering each of these options carefully against the backdrop of the discovery misconduct here and its effect on plaintiff and the proceedings, the Court finds that Defendants Irfan Moten and Darbar Management's misconduct warrants a significant sanction, either rendering a default judgment against them or entering some combination of measures short of default.

---

[8] Even as of today, Irfan Moten and Darbar Management have not supplemented their discovery responses to state clearly what discovery exists or to state that the Time Cards in fact do not exactly represent plaintiff's wages and hours.

"Dismissing a case with prejudice is one of the harshest sanctions a court can impose, and so courts must be especially careful before taking that step." *Evans v. Griffin*, 932 F.3d 1043, 1048 (7th Cir. 2019) (reversing a dismissal sanction against a prisoner plaintiff who had failed to cooperate in the taking of his court-ordered deposition at a correctional institution, but who had not received actual notice of the deposition).[9] However, it "can be appropriate when the [party] has abused the judicial process by seeking relief based on information that the [party] knows is false." *Ramirez*, 845 F.3d at 776 (quoting *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015)).

> Falsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an unjust result. Even if it is not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly.

*Secrease*, 800 F.3d at 402.

---

[9] The sanctions briefing reveals some confusion over who are the targets of the sanctions motion. In Plaintiff's Post-Evidentiary Hearing Reply Brief ("Post-Hearing Reply" (D.E. 100)), plaintiff argues that Imran and Salim Moten, as well as Rangoonwala and a corporate affiliate of his named Skaanz Enterprises, all should be subject to sanctions because they all are defendants in the case and all were "in the middle of the discovery misconduct mix" or connected to what plaintiff describes as a conspiracy to falsify the Time Cards and conceal and destroy discoverable information in the case. (Post-Hearing Reply at 2-3.) In Defendants' Response to Plaintiff's Post-Hearing Brief ("Post-Hearing Resp." (D.E. 99)), Darbar Management is named as the party responding and argues that plaintiff styled his sanctions motion as against only Irfan Moten and Darbar Management. Post-Hearing Resp. at 2. Although Imran and Salim Moten testified at the hearing, Rangoonwala and Skaanz (an entity) did not, and the hearing saw only a passing mention to Rangoonwala as the mysterious new owner who bought but did not buy the restaurant in 2019. Regardless, as noted above, it was sufficient for the Court's purposes to hear the testimony from Irfan and Imran Moten, along with Salim, that Irfan held a management position at the time of the September-November time frame when discovery responses were being prepared, and that he instructed Imran and Salim to look for responsive documents, whereupon they found apparently none and then participated with Irfan in fabricating the only time cards they ever produced in the case. Moreover, the discovery responses about which plaintiff complains, containing the false verifications, were explicitly served on behalf of Irfan Moten and Darbar Management only. (*See* Hearing Exhs. 9, 10.) On the sanctions motion record as a whole, the Court does not find that Rangoonwala and Skaanz participated in the discovery conduct here, or that Imran or Salim participated in it to a sufficient degree to make sanctions against them appropriate, although their conduct contained many serious red flags. This Report and Recommendation concerns sanctions against defendants Irfan Moten and Darbar Management only.

20

Several courts in this district have considered the issue of sanctions in view of such egregious misconduct. In a recent case, Judge Feinerman found, after an evidentiary hearing on the plaintiff's motion for sanctions, that the defendant's chief executive willfully fabricated evidence and committed perjury by lying in his declaration and deposition. *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*., 230 F. Supp. 3d 896, 913 (N.D. Ill. 2017). As a sanction, he dismissed the defendant's counterclaim, but found that entering a default judgment against the defendant "would be a step too far, in light of the 'particularly severe sanction' of dismissing [the counterclaim]." *Id*. Similarly, in *REP MCR Realty v. Lynch*, 363 F. Supp. 2d 984 (N.D. Ill. 2005), after an evidentiary hearing on a motion for sanctions against the defendant, the district court found the defendant had fabricated material documents and "offered wilfully (sic) false and perjurious testimony" at the hearing. *Id.* at 1003.  The court determined that the defendant had "corrupted the discovery record," prejudiced his opposing party by imposing substantial delays and costs and hampered the presentation of his opposing party's claims or defenses.  *Id.* at 1011-12. As a sanction, the court dismissed the defendant's third-party complaint, finding that lesser sanctions such as exclusion of the fabricated evidence would have been "inadequate and hollow," while not reaching the request to sanction the defendant by entering a default judgment.  *Id.* at 1012. *See also ANZ Advanced Techs., LLC v. Bush Hog, LLC*, No. 09-00228-KD-N, 2011 WL 814663, at *11 (S.D. Ala. Jan. 26, 2011), *Report and Recommendation adopted by* 2011 WL 814612 (S.D. Ala. Mar. 3, 2011) (recommending the dismissal sanction in part because the plaintiff's discovery misconduct – including production of false evidence and its refusal to produce its hard drives to inspect whether additional materials were falsified – had "irrevocably 'corrupted the discovery record, which is of signal importance in modern civil litigation'") (quoting *Lynch*, 363 F. Supp. 2d at 1011).

Here, as in *Lynch* and *Flextronics*, the adverse party was put to motion practice to compel the discovery and then to seek sanctions for its non-production and destruction, only to learn during the sanctions proceedings that the scant documentary evidence produced in the case had been created out of whole cloth. Although the courts in those cases passed on the opportunity to enter default judgment against the offending defendants, they dismissed with prejudice the defendants' own affirmative claims.   Unlike the defendants in those cases, Irfan Moten and Darbar Management do not have counterclaims or a third-party complaint to be dismissed. However, the Court finds there is a sanctions package short of default that would adequately address the severity of defendants' misconduct in this case: holding the plaintiff's allegations about his wages and hours, and his allegations to establish FLSA enterprise liability, to be established for purposes of the litigation, and barring Irfan Moten and Darbar Management from opposing those claims, including barring them from introducing any evidence to oppose those claims.

The FLSA provides that where "the employee alleges that his employer kept inaccurate records," he may prove he has in fact performed work for which he was improperly compensated by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," which may then be negated by the employer "com[ing] forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 818 (7th Cir. 2016). Here, however, the only evidence Irfan Moten and Darbar Management have produced has been fabricated, perjurious, or tainted by their fabrications and perjury. Therefore, the FLSA's built-in remedy for an employer's failure to keep adequate records would be wholly inadequate to address Irfan Moten's and Darbar Management's conduct in this case.

22

Sanctions requiring plaintiff's wage, hour and FLSA enterprise liability claims to be established and barring the offer of evidence to the contrary may well be the functional equivalent of a default judgment. But the severity of this sanction, in view of the shenanigans the Court so far has seen from Irfan Moten and Darbar Management, is required to put a stop to those shenanigans, to preserve the integrity of the Court and the discovery process, and to send a message to all litigants that the consequences for manufacturing discovery documents and then lying about them, concealing the destruction of evidence, and producing deliberately false or misleading evidence in support of a claim are real, severe, and potentially case-changing. Under the circumstance of this case, allowing Irfan Moten or Darbar Management to further contest these issues would be an insufficient punishment for their conduct and an insufficient deterrent to that sort of unacceptable conduct.

## III.    Conclusion

For all of the foregoing reasons, then, the undersigned magistrate judge recommends to the district court that it sanction defendants Irfan Moten and Darbar Management by holding plaintiff's wage and hour claims, and his claim of FLSA enterprise liability as to Darbar Management, to be established and by precluding those defendants from offering any contrary evidence on those key issues.[10] The request for a default judgment ought to be denied. Rule 37(b)(2)(C) also authorizes the Court to order the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the failure, unless that failure was substantially justified or other circumstances make an award of expenses unjust. The willful discovery misconduct by Irfan Moten and Darbar

---

[10] Although the undersigned magistrate judge is recommending sanctioning only Irfan Moten and Darbar Management, *see supra* n. 5, the district court has tools at its disposal to prevent any attempt by the remaining defendants to offer the very same fabricated evidence addressed in this Report and Recommendation (for example, entertaining appropriate motions *in limine* to preserve and protect the intended effect of its ultimate ruling on the motion for sanctions).

Management was not substantially justified here, and other circumstances do not make an award of expenses unjust.  Accordingly, the undersigned magistrate judge recommends that the district court order Irfan Moten and Darbar Management, jointly and severally, to pay the reasonable attorney's fees and costs that plaintiff incurred in connection with uncovering these defendants' misconduct and litigating the motion to compel and the sanctions motion. If the district court concurs, the magistrate judge expects that the district court will set a short briefing schedule for plaintiff to set forth such fees and costs with evidentiary support, for Irfan Moten and Darbar Management to respond, and for plaintiff to reply. *See Flextronics*, 230 F. Supp. 3d at 914.  In the meantime, defendants' motion to extend discovery (D.E. 79) is denied without prejudice pending the district court's adoption, rejection, or modification of this Report and Recommendation, whereupon the parties will be required to confer and submit a Rule 26(f) report as to the prompt scheduling and conclusion of any remaining discovery to be done in this case.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: January 25, 2021**

24